IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| EMANUELLE K. F. OLIVEIRA-MONTE, Ph.D.<br>    Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| VANDERBILT UNIVERSITY<br>    Defendant. | )<br>)<br>) |

## COMPLAINT

1. Plaintiff, by and through counsel, herein files this action for damages is brought to redress the Defendant's contravention of rights secured to Plaintiff by the Americans with Disabilities Act (ADA), 42 U.S.C. §§12101 *et seq*. Plaintiff further asserts failure to promote claims based on her disability in violation of 42 U.S.C. §12112(a), which proscribes discrimination against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. Further, Plaintiff asserts claims of retaliation for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court over this controversy is invoked pursuant to the provisions of 29 U.S.C. §1331.

3. Plaintiff has complied fully with all the prerequisites to jurisdiction in this Court. The Equal Employment Opportunity Commission issued a right to sue letter, dated March 29, 2022, therefore the filing of this Complaint is timely.

4. As the unlawful employment practices complained of herein occurred within the Middle District of Tennessee, venue lies in the Middle District under 28 U.S.C. §1391.

## PARTIES

5. Plaintiff, Emanuelle K. F. Oliveira-Monte, "hereinafter referred to as "Plaintiff" is a citizen and resident of Nashville, Tennessee. Plaintiff is a person entitled to protection pursuant to the provisions of 42 U.S.C. §12111(8) to be treated as an employee within the meaning of the ADA.

6. The Defendant, Vanderbilt University (hereinafter referred to as "Defendant" is a non-profit domestic corporation whose principal office is located at 2100 West End Avenue, Suite #750, Nashville, Tennessee 37203. The registered agent for service of process is Vanderbilt University, General Counsel, 305 Kirkland Hall, Nashville, Tennessee 37240.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7. On or about August 2002, Plaintiff commenced employment with Vanderbilt University, as an Assistant Professor in the Department of Spanish and Portuguese. Shortly thereafter, in May 2008, Plaintiff was granted early tenure and promoted to Associate Professor. Plaintiff possesses a Ph.D. degree from the

University of California at Los Angeles (UCLA). Plaintiff has published books and multiple research articles and is highly accomplished in her field of study. (See Exhibit #1 CV.)

8. On or about March 25, 2015, Plaintiff gave birth to a son via C-section. At the hospital, she suddenly became paralyzed and was forced to spend four (4) days at St. Thomas Midtown to complete exams in order to determine the causes of the paralysis.

9. On or about April 2015, Plaintiff received a confirmed diagnosis of Relapsing-Remitting Multiple Sclerosis (RRMS) and immediately started treatment for Multiple Sclerosis "MS".

10. On or about February 2017, Plaintiff's health conditions quickly deteriorated and she applied for a Hematopoietic Stem Cell Transplantation (HSCT) in a last effort to stop the rapid progression of her MS.

11. On or about May 2017, Plaintiff requested an ADA accommodation from the Equal Opportunity, Affirmative Action, Disability Services (EAD) office to teach only one course during the 2018 Spring semester.

12. In October 2017, the negotiations on Plaintiff's ADA accommodation request proceeded and, finally, five (5) months after having first applied, she received a counter-response. The chair of her department, Benigno Trigo, informed her by phone that Dean Benton had given her final approval for a reduced teaching load for the 2018 Spring semester at a 25% salary cut from January 1 to August 31. However, she had to perform more university service than originally allocated to

her for that semester. Plaintiff argued that a 25% salary reduction was unwarranted and retaliatory as teaching was just a small part of faculty's jobs; she was also expected to perform service to the university (participating in different committees) and excel in research and writing. Defendant informed Plaintiff that "it was a take-it-or-leave-it" offer.

13. Plaintiff would state that many academic buildings on campus are not equipped to accommodate individuals with disabilities.

14. Plaintiff would state that between 2018 to 2020 she requested accommodations involving reassignment of classes to Wilson Hall and the use of a scooter to travel between class buildings on campus. Plaintiff knew that a scooter had been approved for another employee yet she was denied the accommodation.

15. Plaintiff would state that Defendant is not in compliance with the ADA and should modify all academic building to make them accessible to individuals with disabilities.

16. Plaintiff would further state that Defendant had notice of her disability status as she had a history of filing EEO complaints and requesting accommodations as a result of her disability and its progressive nature.

17. On or about early 2020, Plaintiff was recommended for promotion to Professor by her Department.

18. The Vanderbilt University Faculty Manual states the procedure for promotion to Professor are the same as those for the award of Tenure. In particular, the "process ordinarily requires a positive recommendation by a majority of tenured

Professors in the department or school. In the School of Medicine, the positive recommendation is from the Executive Committee of the Executive Faculty in lieu of the recommendation from a majority of the tenured Professors in the department or school." "Vanderbilt expects the level and quality of achievement in (1) research, scholarship, or creative expression; (2) teaching; and (3) service to be equivalent to that required of Professors in leading departments and schools of other major research universities. The candidate must have attained national or international recognition among leading scholars in their/her/his discipline for sustained and excellent research, must have taught the courses requested by the department or school at a consistently high level of effectiveness, and must have demonstrated a well-developed and recognized record of service both to the University and their discipline." (Faculty Manual; Exhibit #2).

19. On or about February 11, 2020, Plaintiff received a phone call from the acting chair of her department, Benigno Trigo, informing her that Dean Geer, of the school of arts and sciences, had unilaterally rejected her promotion.

20. On or about February 12, 2020, Plaintiff met with Trigo and he gave her a letter from the Dean which contained a single sentence, "I regret to inform you that Dean John Geer has decided not to support the recommendation of the Department of Spanish and Portuguese to promote you to the rank of Full Professor."

21. During the meeting, Trigo explained that she could appeal. An appeal required the affirmative vote of a least two-thirds of the tenured faculty who are

5

eligible to participate at the time of the original vote, and the appeal is directed to the University Promotion and Tenure Review Committee (PTRC).

22. On or about February 21, 2020, the eligible members of the Department of Spanish and Portuguese voted unanimously to appeal the Dean's decision.

23. However, the dean's decision not to promote was upheld and once again no initial rationale given for the action.

24. Shortly thereafter, Plaintiff met with the dean to discuss the reasons why she was not promoted to full professor, at which he stated, "If, I mean, as Bonnie said and I've said, to go up without that third book at a university press, or some press that everybody agrees is really good, you know, it doesn't, not to be, you know, kind of *arbitrary* about this, but it has to be, you know, either a highly successful book or some book at a university press that sends the right signals. The chances of a successful promotion it's just low." (Exhibit #2, Transcript of meeting). Plaintiff would state that it was common practice for Professors to be promoted to full-professor with two books alone.

## COUNT I
## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT (ADA)

25. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs 1 through 24 of this Complaint as if fully set forth here.

26. Plaintiff can establish a prima facie case of disability discrimination: (1) she is disabled; (2) she is otherwise capable of performing the essential functions

of the position, with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of his disability, *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 433 (6th Cir. 2014).

27. In order to establish her failure to promote, Plaintiff must prove that "but for" her disability, she would have been promoted. *See Wright v. Memphis Light, Gas & Water Div.*, 558 Fed. Appx. 548, 555 (6th Cir. 2014) *Barkeley v. Steelcase, Inc.*, No. 1:07-CV-1008, 2009 U.S. Dist. LEXIS 21125, 2009 WL 722601, at 11 (W.D. Mich. Mar. 17, 2009). Cited by: *Sukari v. Akebono Brake Corp.*, No. 18-10987, 2019 U.S. Dist. LEXIS 127177, at 20 (E.D. Mich. July 31, 2019)

28. Plaintiff can establish that she is disabled as "under the ADA, a "disability" means either (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." *Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 480 (6th Cir. 2005) (citing 42 U.S.C. § 12102(2)). Cited by *Seitz v. Lane Furniture Indus.,* No. 07CV171, 2008 U.S. Dist. LEXIS 79651, at 32-33 (N.D. Ohio Sep. 17, 2008). Plaintiff suffered debilitating disease that required continued medical attention.

29. Plaintiff can establish that Defendant had notice of her disability and her frequent request for accommodation. Further, her disability was openly discussed during the promotion process. Dean Geer argued that Plaintiff had not progressed since tenure, yet he was reminded of her medical treatment during the period leading up to her recommendation for promotion.

7

30. Plaintiff was unanimously referred to promotion by her department for promotion to full-professor. The only individual strongly against her promotion was Dean Geer.

31. After Plaintiff's promotion was denied, Plaintiff pressed Dean Geer for his rationale. Instead of a clear and cogent reason the Dean offered that Plaintiff did not meet the standard of excellence required by the Faculty Manual and low-level of research since tenure.

32. Defendant offered several wholly different reasons for denying her promotion; at one time it was needing a third book; then instead he wanted a recognizable second book; he also claimed that the promotion did not "resonate" with him.

33. Defendant's proffered reasons for failure to promote Plaintiff are mere pretext, covering up for their actual intentions of discrimination. The Dean's own admission that his decisions were arbitrary can establish a basis for pretext.

34. As a result of the intentionally discriminatory acts of the Defendant, Plaintiff has suffered and will continue to suffer grievous harm including, without limitation, monetary damages and damages for mental anguish and humiliation, unless and until this Court grants relief.

# COUNT II

## RETALIATION FOR PROTECTED ACTIVITY UNDER THE ADA

35. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs 1 through 34 of this Complaint as if fully set forth here.

36. Plaintiff can establish a prima facie case of ADA retaliation, (1) the Plaintiff engaged in protected activity; (2) the employer knew of that activity; (3) the employer took an adverse employment action against the Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). Cited by <u>*Sharp v. Waste Mgmt.*,</u> 47 F. Supp. 3d 584, 600 (S.D. Ohio 2014)

37. The Plaintiff was retaliated against by Vanderbilt lowering her salary by 25% in response to her request for accommodations.

38. As a result of the intentionally discriminatory acts of the Defendant, Plaintiff has suffered and will continue to suffer grievous harm including, without limitation, monetary damages and damages for mental anguish and humiliation, unless and until this Court grants relief.

**WHEREFORE,** Plaintiff**,** prays that a judgment be rendered in her favor against Defendant in the amount of no less than Three Hundred Thirty-Six Thousand ($336,000.00) dollars, for compensatory, punitive and other damages suffered by her, including but not limited to, damages for pain and suffering, humiliation and embarrassment, back pay, front pay, and lost benefits.

**FURTHER,** Plaintiff prays for pre-judgment interest, and the cost of this cause together with reasonable attorney fees.

**FURTHER,** Plaintiff requests promotion to full professor retroactive to the date of application.

**FURTHER**, Plaintiff demands a jury of six (6) to try this cause.

**FURTHER**, Plaintiff requests such other, further relief, for which Plaintiff may be entitled.

Respectfully submitted,

s/Frank J. Steiner
Frank J. Steiner    BPR# 26920
2200 21st Avenue South, Suite 309
Nashville, Tennessee 37212
(615) 730-6090
franksteiner@franksteinerlaw.com
*Attorney for Plaintiff*