IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EMANUELLE K.F. OLIVEIRA-MONTE, Ph.D., ) ) ) Plaintiff, ) ) v. ) ) ) VANDERBILT UNIVERSITY, ) ) Defendant. ) | NO. 3:22-cv-00481 JUDGE CAMPBELL MAGISTRATE JUDGE FRENSLEY |

## MEMORANDUM

Pending before the Court is Defendant Vanderbilt University's ("Vanderbilt") Motion for Summary Judgment (Doc. No. 51). Plaintiff Emanuelle K.F. Oliveira-Monte ("Dr. Oliveira-Monte") filed a response in opposition (Doc. No. 58) and Vanderbilt filed a reply (Doc. No. 68-1). For the reasons discussed below, Vanderbilt's motion will be **GRANTED**. Vanderbilt also filed a Motion to Continue Trial Date (Doc. No. 72), which will be **DENIED** as moot.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Dr. Oliveira-Monte is a tenured Associate Professor of Luso-Brazilian Studies at Vanderbilt. (Doc. No. 58-1 at PageID # 2243). In May 2008, Vanderbilt granted early tenure to Dr. Oliveira-Monte and promoted her to Associate Professor. (*Id.* at PageID # 2837; Doc. No. 53-6 at PageID # 869-870). In April 2015, Dr. Oliveira-Monte was diagnosed with Relapsing-Remitting Multiple Sclerosis and started treatment. (Doc. No. 58-1 at PageID # 2251). Dr. Oliveira-Monte requested a medical leave for the 2014-2015 academic year, which Vanderbilt granted. (Doc. No. 54-13 at PageID # 1867). Dr. Oliveira-Monte requested parental leave for Fall semester 2015, which Vanderbilt granted. (Doc. No. 54-13 at PageID # 1867). Dr. Oliveira-Monte also requested a medical leave for Fall semester 2017, which Vanderbilt granted. (*Id.*). In 2019,

Dr. Oliveira-Monte applied for promotion to full Professor. (Doc. 54-11 at PageID # 1788). Among other things, Vanderbilt's Faculty Manual provides that, for promotion to full Professor, candidates are required to meet the following standards:

> (1) Excellence in research, scholarship, or creative expression in one's discipline; (2) a high level of effectiveness in teaching; and (3) satisfactory performance in the area of service. From discipline to discipline, the form taken by a candidate's contributions will vary. But, in each case, Vanderbilt expects the level and quality of achievement in these three areas to be equivalent to that required for tenure in leading departments or schools of other major research universities. The three standards are independent; a deficiency in one area cannot be offset because the candidate exceeds the required standard in another.

(Doc. No. 53-7 at PageID # 963). The Faculty Manual also provides the following:

> Candidates to be considered for tenure are persons who have already achieved and who show promise of continuing to achieve a level of excellence in their contribution to the research, scholarship, or creative expression appropriate to their discipline or profession and as described in their letter of appointment. Indicators of excellence include originality, logical rigor, distinctiveness of ideas, creativity of expression, independence of thought in identifying projects and framing issues for analysis, advancement of a theoretical viewpoint or a perceptive and balanced criticism of such a viewpoint, and significant and important intellectual impact.
>
> …
>
> By the time of the tenure review, [candidates] must have completed and made available research, scholarship, criticism, or artistic production of such high quality as to gain favorable recognition within their discipline and at a national level. The works may be available through the publication of books and articles, the circulation of manuscripts intended for publication, lectures and presentations, exhibits, or performances.

(Doc. No. 53-7 at PageID # 963). The eligible faculty members of Dr. Oliveira-Monte's department voted unanimously in favor of recommending her for promotion to full Professor. (Doc. No. 54-29 at PageID # 1971). The Senior Advisory Review Committee ("SARC") met on November 26, 2019, to discuss Dr. Oliveira-Monte's application for promotion. (Doc. No. 54-33). A summary of the SARC meeting provided that "[t]he members of SARC found [Dr. Oliveira-Monte's] productivity to be thin" and that "[w]hile the external reviews endorse promotion, their

2

analysis of [Dr. Oliveira-Monte's] most recent work (*Barak* [sic] *Obama is Brazilian*) is lukewarm at best." (Doc. No. 54-33 at PageID # 2017). The summary also provided that "[t]here was also discussion on whether this promotion was a bit premature" and "[h]ad there been published reviews of *Barak* [sic] *Obama is Brazilian* the case for arguing Professor Oliveira's impact on the filed might have been easier to make." (*Id.*).

Dean John Geer prepared a memorandum dated February 11, 2020, in which he did not concur with the department's recommendation for Dr. Oliveira-Monte's promotion. (Doc. No. 54-34). In the memorandum, Dean Geer stated that "[a]lthough all of Professor Oliveira-Monte's external readers support her promotion to full professor, they offer some serious concerns in their evaluation of her scholarship" and that "[a]s I look at the complete file, there are two key concerns about her case for promotion to full professor" including "her low level of research productivity since tenure" and "the uncertain quality of her 'promotion' book, *Barack Obama is Brazilian*." (*Id.* at PageID # 2020). Dean Greer also stated that amongst the external reviewers "there is sparse mention of specific original arguments of the [*Barack Obama is Brazilian*] book or of its potential for changing the scholarly thinking in the field" and "[i]n other words, we lack sufficient evidence that the book constitutes an innovative and original piece of scholarship, one that is likely to influence the future scholarly development of the field", which he deemed "no small matter since we expect our full professors to be positioned as intellectual leaders in their disciplines." (Doc. No. 54-34 at PageID # 2021). Dean Geer evaluated Dr. Oliveira-Monte's productivity over an eight-and-a-half-year period, excluding any time Dr. Oliveira-Monte was on parental and medical leave. (*Id.* at PageID # 2020).

The eligible faculty members of Dr. Oliveira-Monte's department decided to appeal Dean Geer's nonconcurrence to the Promotion and Tenure Review Committee ("PTRC"). (Doc. No. 54-

3

7 at PageID # 1586). On March 31, 2020, the PTRC voted not to approve the department's recommendation to promote Dr. Oliveira-Monte. (Doc. No. 54-39). As grounds, the PTRC stated that "[t]he principal concern was with the scholarly record, which was determined to be insufficient to meet the standard of excellence specified in the *Vanderbilt University Faculty Manual*." (Doc. No. 54-39 at PageID # 2052). After her promotion was denied, Dr. Oliveira-Monte requested a meeting with Dean Geer to discuss the denial and inquire about her future path, which Dean Geer agreed to. (Doc. No. 54-11 at PageID # 1814). During the meeting, Deen Geer stated he was interested in "developing, thinking through a path forward so that, you know you can, you know, we can make sure that we do see a successful promotion down the road because that's what we all want." (Doc. No. 54-40 at PageID # 2054 - 2055). Dr. Oliveira-Monte has not applied for promotion to full Professor since her application was denied in 2020. (Doc. No. 54-11 at PageID # 1809 - 1810).

Dr. Oliveira-Monte filed this lawsuit against Vanderbilt on June 26, 2022, asserting claims of disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA"). Vanderbilt filed a motion to dismiss Dr. Oliveira-Monte's claims (Doc. No. 16), and the Court dismissed the retaliation claim. (Doc. No. 32). Accordingly, Dr. Oliveira-Monte's disability discrimination claim is the only remaining claim before the Court.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party

may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

Dr. Oliveira-Monte does not point to direct evidence in support of her disability discrimination claim.[1] Where a plaintiff relies on indirect, circumstantial evidence to support her discrimination claim, the court will "apply the three-part burden-shifting framework developed by

---

[1] "ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (internal citation omitted). "Direct evidence of disability discrimination 'does not require the fact finder to draw any inferences [to conclude] that the disability was at least a motivating factor.'" *Id.* (internal citation omitted). "Whether a plaintiff's evidence may be properly categorized as direct or circumstantial is of importance, because a direct-evidence claim is removed from the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346–47 (6th Cir. 2012). "Instead, the plaintiff's case-in-chief is met, and 'the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.'" *Id.* (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). Additionally, when a plaintiff does not rely on direct evidence, the "*McDonnell Douglas* paradigm is used… to evaluate a plaintiff's claim that his discharge from employment was discriminatory." *Cash v. Siegel-Robert, Inc.*, 548 F. App'x 330, 334 (6th Cir. 2013).

5

the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668(1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775-76 (6th Cir. 2016).

Here, Vanderbilt argues Dr. Oliveira-Monte cannot establish a disability discrimination claim under the ADA because: (a) she was not qualified for the promotion; (b) she failed to show that any similarly situated, non-disabled faculty member was treated more favorably than her; (c) her disability was not the reason for Vanderbilt's denial; and (d) she has no proof that Vanderbilt's legitimate, nondiscriminatory reason for denying the promotion was pretextual.

**A. Prima Facie Case**

    1. Qualified for the Promotion

To establish a *prima facie* case of disability discrimination by circumstantial evidence, Dr. Oliveira-Monte must show that (1) she is disabled; (2) she is otherwise qualified for the position with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) Vanderbilt knew or had reason to know of her disability; and (5) she was treated less favorably than similarly situated non-disabled employees, or, after the adverse employment action, she was replaced by a non-disabled person or her position remained open. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011); *Brady v. Potter*, 273 F. Appx. 498, 502 (6th Cir. 2008). Under the ADA, the plaintiff's disability must be a "but for" cause of the adverse employment action. *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419,433 (6th Cir. 2014).

Vanderbilt contends that Dr. Oliveira-Monte cannot establish her prima facie discrimination claim because the quantity and quality of her scholarship failed to meet Vanderbilt's standard of excellence and thus, Dr. Oliveira-Monte was not qualified for the promotion to full Professor. (Doc. No. 51 at PageID # 381). However, Vanderbilt's foregoing argument relies on

6

the same conduct it proffers as its legitimate, nondiscriminatory reason for not promoting Dr. Oliveira-Monte. (*See* Doc. No. 51 at PageID # 391-392) (nondiscriminatory reason for failing to promote Dr. Oliveira-Monte was that her scholarship did not meet Vanderbilt's standard of excellence)). "[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003). Accordingly, Vanderbilt's challenge of Dr. Oliveira-Monte's proof as to this element fails.

2. Similarly Situated Individuals

Vanderbilt also contends that Dr. Oliveira-Monte failed to demonstrate that any similarly situated, non-disabled faculty member was treated more favorably than her. (Doc. No. 51 at PageID # 390). In response, Dr. Oliveira-Monte argues that several other faculty members in the College of Arts and Science were promoted after publishing a second book. (Doc. No. 58 at PageID # 2236). Plaintiff testified that she compiled information about such faculty members by reviewing information and CVs that appear on Vanderbilt department web pages. (Doc. No. 54-11 at PageID # 1787).

However, Vanderbilt does not include any facts in its statement of undisputed material facts regarding this element. Instead, Vanderbilt relies on Dr. Oliveira-Monte's deposition testimony that she has not reviewed the promotion files of any of these faculty members and did not have access to information about those faculty members regarding the substance of their second books or other information that contributed to their promotions. (Doc. No. 68-3 at PageID # 3003-3007). The Court finds that by failing to include facts supporting this argument in its statement of undisputed material facts, Vanderbilt has failed to demonstrate the absence of a

genuine dispute as to this element. Accordingly, the Court finds that, viewing the facts in the light most favorable to Dr. Oliveira-Monte, she has established a prima facie discrimination claim.

**B. Legitimate, Nondiscriminatory Reason**

"Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant, who must 'rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "In satisfying that burden, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.' Instead, '[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (internal citations omitted).

Vanderbilt contends that there is no genuine issue of material fact as to whether Dr. Oliveira-Monte was "otherwise qualified" for the promotion she sought because it found that her scholarship did not meet Vanderbilt's standard of excellence for promotion to full Professor. (Doc. No. 51 at PageID # 381). Vanderbilt does not dispute that Dr. Oliveira-Monte's record of teaching and service met Vanderbilt's standard of promotion, but rather argues that "there was insufficient evidence in [Dr. Oliveira-Monte's] promotion file that she had 'attained national or international recognition among leading scholars in [her] discipline for sustained and excellent research'" in accordance with Vanderbilt's standard. (*Id.* at PageID # 381 - 382). Vanderbilt contends that Dr. Oliveira-Monte was not qualified for promotion because of two reasons: the quantity and quality of her scholarship. In support of its argument, Vanderbilt points to evidence that Dean Geer noted

that the external review letters "taken together, fail to provide a convincing narrative regarding [the second book's] quality and impact" and that "[i]t is striking that none of the external reviewers offer strong and/or detailed praise for the book." (Doc. No. 54-34 at PageID # 2020). Dean Geer further observed that "five of the [external reviewers]…engage it only briefly and do not spend much more than a full paragraph discussing it. It is difficult to interpret such lack of intellectual engagement as positive. Others…do discuss the book a bit more, but their discussion is largely descriptive, a review of the book's arguments rather than a scholarly assessment of the book's contribution to field of comparative Brazilian studies. This lack of engagement with the substance of *Barack Obama is Brazilian* on the part of external reviewers is worrisome." (Doc. No. 54-34 at PageID # 2020 - 2021). Dean Geer also noted that after reviewing the external review letters, "there is sparse mention of specific original arguments of the book or of its potential for changing the scholarly thinking in the field. In other words, we lack sufficient evidence that the book constitutes an innovative and original piece of scholarship, one that is likely to influence the future scholarly development of the field" and that "[t]his is no small matter since we expect our full professors to be positioned as intellectual leaders in their disciplines." (Doc. No. 54-34 at PageID # 2021).

Accordingly, the Court finds that Vanderbilt has met its burden of demonstrating a legitimate, nondiscriminatory reason for denying Dr. Oliveira-Monte's application for promotion to full Professor, namely, that Vanderbilt determined that Dr. Oliveira-Monte's quantity and quality of scholarship failed to meet its standard of excellence. As Vanderbilt has set forth a legitimate, nondiscriminatory reason for failing to promote Dr. Oliveira-Monte, the burden shifts back to Dr. Oliveira-Monte to demonstrate that this legitimate, nondiscriminatory reason was pretext. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. at 248.

**C. Pretext**

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (internal citation omitted).

When considering a university's decision regarding tenure and promotion, "[t]he Court undertakes its examination in light of the fact that tenure decisions are unlike virtually any other kind of employment decision, and consequently, they warrant a slightly different kind of scrutiny from the courts." *Dobbs-Weinstein v. Vanderbilt Univ.*, 1 F. Supp. 2d 783, 795 (M.D. Tenn. 1998), *aff'd*, 185 F.3d 542 (6th Cir. 1999) (internal citation omitted). This is because "Courts are particularly ill-equipped to evaluate academic performance." *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 92 (1978). "While the tenure decision's unique context certainly does not insulate universities from the reach of anti-discrimination statutes, the Court must also be cognizant of the well-established principle that a court considering a tenure decision must refrain from substituting its subjective judgment about a teacher's qualifications for those of professional scholars." *Dobbs-Weinstein*, 1 F. Supp. 2d 783 at 795 (internal citations omitted). "Rather, a court's inquiry must focus on what actual evidence directly or indirectly implicates discrimination as the motive behind an institution's stated academic reasons for denying tenure." *Id.* (internal citation omitted); *Thrash v. Miami Univ.*, 549 F. App'x 511, 521 (6th Cir. 2014) (internal citation omitted) ("As the Seventh Circuit explained: [T]enure cases require something more than mere qualification; the department must believe the candidate has a certain amount of promise .... Given the nuanced nature of such decisions, we generally do not second-guess the expert decisions of faculty committees.... Accordingly, in the absence of clear discrimination, we are generally

reluctant to review the merits of tenure decisions, recognizing that scholars are in the best position to make the highly subjective judgments related [to] the review of scholarship and university service."); *Langland v. Vanderbilt Univ.*, 589 F. Supp. 995 (M.D. Tenn. 1984), *aff'd*, 772 F.2d 907 (6th Cir. 1985).

   1. <u>Quantity of Scholarship</u>

Dr. Oliveira-Monte argues that Vanderbilt's proffered reason regarding quantity of scholarship is pretextual and points to Dean Geer's deposition testimony that "there is not some quantitative standard tied to promotion" and contends in her response that "[t]herefore this section will not be addressed." (Doc. No. 58 at PageID # 2228).

Vanderbilt points to evidence in the record that Dr. Oliveira-Monte did not publish any journal articles between 2013 and 2019 and published only one book between her award of tenure in 2008 and her application for promotion to full Professor in 2019. (Doc. No. 54-11 at PageID # 1805; Doc. No. 10 at PageID # 1066). Vanderbilt also points to evidence that Dr. Oliveira-Monte agrees that an external review letter can be interpreted differently by reasonable scholars and that the gap in publication of journal articles was a "fair concern" about her promotion file. (Doc. No. 54-11 at PageID # 1805 - 1806). Vanderbilt points to evidence that Dr. Oliveira-Monte testified that when considering whether an individual should be promoted, "books are key issues in the humanities, certainly" and that "[a]rticles, peer-reviewed articles, editing" as well as "a gap in production" should also be considered. (Doc. No. 54-11 at PageID # 1784). Vanderbilt has shown that over the course of eight-and-a-half years, Plaintiff released, on average, less than one publication annually. (Doc. No. 51 at PageID # 383; Doc. No. 54-37 at PageID # 2045).

Vanderbilt also relies on an observation from one of Dr. Oliveira-Monte's external reviewers that "As far as weakness is concerned, I would point out the relatively small number (of

11

course, not the outstanding quality) of Oliveira's publications. From May 2008 (when she was tenured) to February 2019 (when she applied for promotion to full professor), that is, in approximately eleven years, she published one book and five research articles (two in referred journals and three in academic books)." (Doc. No. 54-20 at PageID # 1902). Vanderbilt points to evidence that a different external reviewer wrote that "[t]he number of articles and book chapters published by Professor Oliveira since her promotion to associate professor in 2008 is not extensive." (Doc. No. 54-24 at PageID # 1918).

Vanderbilt demonstrates that the members of the SARC and Dean Geer also expressed concern regarding the quantity of Dr. Oliveira-Monte's scholarship by pointing to evidence that "[t]he members of SARC found Professor Oliveira's productivity to be thin" and "[e]ven accounting for [Dr. Oliveira-Monte's medical leaves] we are still facing a rather low publication rate for promotion to full professor." (Doc. No. 54-34 at PageID 2020). Similarly, Vanderbilt points to evidence that the PTRC members shared concerns regarding the quantity of Dr. Oliveira-Monte's publications, stating that Dr. Oliveira-Monte had "a publication rate of far less than one per year, which has to be acknowledged to be very thin" and that "[a]t the core of this case is the question of whether there has been enough scholarship since tenure was granted." (Doc. No. 54-37 at PageID # 2045). Dr. Oliveira-Monte fails to provide evidence demonstrating that Vanderbilt's proffered reason for denying her the promotion due to her quantity of scholarship is pretextual. Accordingly, the Court finds that there is no genuine dispute as to the fact that Vanderbilt's denial of Dr. Oliveira-Monte's promotion was based in part on her quantity of scholarship.

### 2. Quality of Scholarship

Dr. Oliveira-Monte also contends that Vanderbilt's proffered reason regarding quality of scholarship is pretext for discrimination because she was qualified for the promotion. Dr. Oliveira-Monte points to evidence that eligible faculty members in her department voted unanimously in favor of her promotion. (Doc. No. 54-29). Dr. Oliveira-Monte also points to evidence that in the meeting to discuss her application for promotion, Professor Trigo stated that "[h]er research is excellent, she demonstrates a high level of effectiveness in her teaching, and her service is more than satisfactory." (Doc. No. 54-29 at PageID # 1974). Dr. Oliveira-Monte also relies on the external review letters in her promotion file, each of which she contends supports her promotion to full Professor. (Doc. Nos. 54-18 – 54-26).

Vanderbilt contends that there is no genuine issue of material fact as to the fact that the quality of Dr. Oliveira-Monte's scholarship did not meet Vanderbilt's standard of excellence. (Doc. No. 51 at PageID # 384). Vanderbilt points to evidence that multiple individuals at various levels of Dr. Oliveira-Monte's promotion file review process expressed concern with her quality of scholarship. Vanderbilt relies on evidence of Dean Geer's concern that Dr. Oliveira-Monte's second book was not published by a major university press and that his "concern that the book landed in an academic trade press is accentuated by the lack of enthusiasm the external reviewers have for it." (Doc. No. 54-34 at PageID # 2020). Vanderbilt also points to evidence that before Dr. Oliveira-Monte published her second book, Professor Trigo advised her not to publish it with the trade press and informed her that "they are not a university press. As you are probably aware from your past reviews and Counsaling [sic] Memoranda, the College of Arts and Sciences advices [sic] for Faculty to publish in university presses" and "the golden standard for 'quality' in publishing at Vanderbilt is the university press." (Doc. No. 54-14 at PageID # 1870 – 1871). Vanderbilt further

points to evidence that Dr. Oliveira-Monte considered applying for promotion to full Professor in 2018 but decided to wait to see if she could publish "one or two more articles in peer-reviewed journals" and that she was advised by the Dean of her department to wait another year before applying in part so she could increase the number of articles published in peer-reviewed journals. (Doc. No. 68-3 at PageID # 3008 - 3009).

Vanderbilt also points to evidence that one of the PTRC members assigned to review Dr. Oliveira-Monte's promotion file prior to the PTRC meeting wrote that "this is a borderline-to-weak case that the dean was right to turn back, for the reasons indicated below" and that "the letters are tepid at best" finding that "[m]any speed past the 2nd book either to anticipate the contribution of the book in progress or to get to other things after discussing the impact of the first book." (Doc. No. 54-38 at PageID # 2049). The same individual wrote "[t]he department is right to point out that the letters insist on the originality of the contribution. But the dean is right to point out that they say this without cashing it out in terms of its impact on her field(s). It reads like a trivial truth: the book is original because no one has written it before. That doesn't mean it's *importantly* original." (*Id.* at PageID # 2050). Vanderbilt points to evidence that the PTRC's consideration of Dr. Oliveira-Monte's promotion file focused largely on concern about the quality of her second book. (Doc. No. 54- 8 at PageID # 1665; Doc. No. 54-10 at PageID # 1749 - 1750).

Vanderbilt also demonstrates that the SARC was concerned about "whether this promotion was a bit premature" and stated that "[h]ad there been published reviews of *Barack Obama is Brazilian* the case for arguing Professor Oliveira's impact on the field might have been easier to make." (Doc. No. 54-33 at PageID # 2017). The evidence before the Court demonstrates that there was expressed concern amongst various individuals at multiple levels of Dr. Oliveira Monte's

14

promotion file review process regarding the quality of her scholarship, which the Court finds is sufficient to demonstrate that the concerns raised were legitimate and reasonable.

Dr. Oliveira-Monte acknowledged that the decision of whether to promote a faculty member to full Professor depends on the circumstances and substance of each individual promotion file and that even for candidates with a published second book, "the promotion file should be examined and see the conditions of the candidate…you need a file to analyze and [sic] all the circumstances of the file" to evaluate an application for promotion. (Doc. No. 54-11 at PageID # 1784 - 1785). Moreover, Dr. Oliveira-Monte does not dispute that that she did not publish any peer-reviewed journal articles between 2013 and 2019. (Doc. No. 58-1 at PageID # 2253). Nor does she dispute that she published her second book in a trade press instead of a university press and that at the time she applied for promotion to full Professor, there was only one published review of her second book. (Doc. No. 58-1 at PageID # 2253-2254). Instead, Dr. Oliveira-Monte argues that the support of her department demonstrates the strong quality of her scholarship and that the decision to deny her application for promotion "was subjective based on erroneous data." (Doc. No. 58 at PageID # 2230).

Dr. Oliveira-Monte also contends that her disability "was openly discussed in the promotion file during the promotion process between Geer and the department chair" and that Dean Geer "was reminded of her medical treatment during the period leading up to her recommendation for promotion" and "[t]he mere fact that Geer would discuss her disability during the promotion process is indirect evidence that her disability was a part of the decision process." (Doc. No. 58 at PageID # 2231). However, Dr. Oliveira-Monte fails to provide evidence demonstrating that she was denied the promotion because of her disability. Further, Vanderbilt

15

points to evidence that it excluded from its consideration any time that Dr. Oliveira-Monte was on leave. (Doc. No. 54-34 at PageID # 2020; Doc. No. 54-4 at PageID # 1352 - 1353).

Dr. Oliveira-Monte also relies on a statement written by one of the PTRC members that "[t]his reads a great deal like a file that should have waited for the next book, but they rushed it through to reward/support a colleague with health issues", which Dr. Oliveira-Monte contends constitutes "derogatory statements of Monte's illness and disability" and "shows they were discussed, and there were *negative* opinions against my medical issues." (Doc. No. 54-38 at PageID # 2049; Doc. No. 58 at PageID # 2233). The Court disagrees and finds that neither this statement, nor any other evidence provided by Dr. Oliveira-Monte, demonstrates that she was denied the promotion to full Professor because of her disability.[2] Accordingly, the Court finds that

---

[2] Dr. Oliveira-Monte also relies on the following statement from the minutes of the department meeting regarding appealing Dean Geer's nonconcurrence:

> 5. <u>Medical issues</u>. While I – and we as a group – do not believe that Dr. Oliveira-Monte should be granted a promotion on the basis of health issues, we do feel that it must be noted that she has continued to publish, make public appearances, teach, and serve the department, the university, and the profession despite exceptionally serious health problems. These factors should not be the deciding factor for the promotion, but one should bear them in mind and, I believe, give Emmanuelle Oliveira-Monte credit for her drive, perseverance, and dedication to the profession and to Vanderbilt.

(Doc. No. 54-35 at PageID # 2027). However, Vanderbilt is not obligated to lower or modify its standard of excellence because of Dr. Oliveira-Monte's disability. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 762 (C.A.6 (Mich.), 2015) ("[A]s the EEOC elsewhere explains, 'the inquiry into essential functions is not intended to second guess an employer's business judgment with regard to production standards.' 29 C.F.R. § Pt. 1630(n), App. at 395. Nor is it meant 'to require employers to lower such standards.' *Id.*"); EEOC, *Applying Performance and Conduct Standards to Employees with Disabilities* (2008), available at https://www.eeoc.gov/laws/guidance/applying-performance-andconduct-standards-employees-disabilities#perf (accessed July 19, 2024) ("May an employer apply the same quantitative and qualitative requirements for performance of essential functions to an employee with a disability that it applies to employees without disabilities? Yes. An employee with a disability must meet the same production standards, whether quantitative or qualitative, as a non-disabled employee in the same job. Lowering or changing a production standard because an employee cannot meet it due to a disability is not considered a reasonable accommodation"); EEOC, *A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act*, at II (2.3) and IV (4.4), (1992), available at https://www.eeoc.gov/laws/guidance/technical-assistance-manual-employment-provisions-title-i-americans-disabilities-act (accessed July 19, 2024) ("An employer can hold employees with disabilities to

no genuine issue of material fact exists as to the issue of pretext, and summary judgment will be granted as to Dr. Oliveira-Monte's disability discrimination claim.

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

the same standards of production/performance as other similarly situated employees without disabilities for performing essential job functions (with or without reasonable accommodation).")